```
                                            FILED

                                      MAR 22  3 34 PM '02

                                      CLERK U.S. DIST. CT.
                                      EASTERN DIST. OF CALIF.
                                           AT FRESNO
                                      BY _____
                                              DEPUTY
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN GAITHER, DONALD GOHN, and HAROLD D. MARTIN, JR., <br><br>　　　　Plaintiffs, <br><br>　v. <br><br>CRIMSON RESOURCE MANAGEMENT CORPORATION, <br><br>　　　　Defendant. | CIV-F-01-5008 OWW LJO <br><br> MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT |

Before the court is defendant's motion for summary judgment, or in the alternative, partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Oral argument was heard February 25, 2002.

I.   FACTUAL AND PROCEDURAL BACKGROUND

Defendant Crimson Resource Management Corporation ("Crimson") operates oil drilling leases within California.[1]

---

[1]The facts in this section were taken from the defendant's list of undisputed material facts and do not include those facts



Plaintiffs are former on-site oil drilling employees of defendant. Before May 1, 2000, Crimson paid its on-site oil drilling employees a salary and did not compensate for any overtime worked.

Under California's Wage and Hour Law, oil drilling employees were exempt from California's overtime laws until January 1, 2000. In the Spring of 2000, Peggie Giesbrect, Crimson's Human Resources Administrator, learned that under the new California law on-site oil drilling employees were required to be paid overtime. As a result of learning about the change, Ms. Giesbrect notified current employees that starting May 1, 2000, on-site oil drilling employees would be paid an hourly wage and would qualify for overtime. She also told oil-drilling employees that they were eligible for overtime starting January 1, 2000 and requested that they notify her of any overtime worked between January 1 and April 30, 2000. When this letter was sent out plaintiffs Gohn and Martin were no longer employed by Crimson and were not sent the notification. Plaintiff Gaither, who was employed by Crimson at that time, received the letter and put in a request for overtime worked between January 1, 2000 and May 1, 2000. Crimson paid Mr. Gaither $2,523.07 which was based on the amount he claimed to have worked minus lunch periods.

Around June 2000, the Wage and Hour Division of the United States Department of Labor began an investigation into Crimson's non-payment of overtime to its employees. Until that time, Crimson was not aware that by not paying overtime to its on-site

---

plaintiffs dispute.

oil drilling employees, it was in violation of the federal Fair Labor Standards Act ("FLSA"). Prior to the Spring of 2000, Crimson had not received any claim for unpaid overtime under the FLSA. Throughout the investigation Crimson cooperated with the Department of Labor's investigator, Thomas Long. All three plaintiffs provided information for the investigation.

In October 2000, the Department of Labor provided Crimson with a "Summary of Unpaid Wages" which indicated that Crimson owed Mr. Gaither $1,704.70 in overtime, Mr. Gohn, $220.27 in overtime, and Mr. Martin $1,906.77 in overtime. Crimson filled out WH-58 forms provided by the Department of Labor and forwarded them along with checks in the amounts identified in the "Summary of Unpaid Wages" to each of the plaintiffs. The WH-58 forms stated:

> Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this receipt unless you have actually received payment of the back wages due.

None of the plaintiffs signed the WH-58 forms, however, plaintiffs Gohn and Martin cashed the checks that accompanied the form. Mr. Gaither did not cash his check, but retained it.

On January 2, 2001, plaintiffs filed suit seeking compensatory damages, liquidated damages, and attorney's fees and costs. On January 18, 2002, defendant moved for summary judgment. Plaintiffs opposed.

3

## II. LEGAL STANDARDS

Summary judgment is warranted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *California v. Campbell*, 138 F.3d 772, 780 (9th Cir. 1998). The evidence must be viewed in the light most favorable to the nonmoving party. *Indiana Lumbermens Mut. Ins. Co. v. West Oregon Wood Products, Inc.*, 268 F.3d 639, 644 (9th Cir. 2001), *amended by* 2001 WL 1490998 (9th Cir. 2001).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). If the moving party fails to meet this burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). However, if the nonmoving party has the burden of proof at trial, the moving party must only show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of proof, the non-moving party must produce evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmoving party cannot simply rest on its allegations without any significant probative evidence tending to support the

4

complaint. *Devereaux*, 263 F.3d at 1076.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

Defendant moves for summary judgment on four grounds: 1) plaintiffs have waived their FLSA claims; 2) plaintiffs are estopped from asserting that they are entitled to additional overtime; and 3) the statute of limitations bars plaintiffs' overtime claims that are outside of the two-year statute of limitations period; and 4) plaintiffs are not entitled to liquidated damages.

### A. WAIVER

Defendant argues that plaintiffs Gohn and Martin waived their entitlement to additional overtime by cashing the settlement checks that were sent to them with the Department of Labor Form WH-58 and that plaintiff Gaither waived his entitlement by not returning his check.

Section 216(c) of Title 29, United States Code states:

> The Secretary is authorized to supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 6 or 7 of this Act [29 USCS § 206 or 207], and the agreement of any employee to accept such payment

> shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

Section 216(c) was added to the FLSA in 1949 to address the decline in voluntary restitution of unpaid wages and overtime. S. Rep. No. 81-640, pt. 2 (1949), *reprinted in* 1949 U.S.C.C.S. 2241, 2249. Between 1946 and 1948 the percentage of employees receiving restitution of back wages and overtime dropped from 74 percent to 56 percent. *Id.* Congress found that "one of the most important [reasons for this decline] is the fact that an employer who pays back wages which he withheld in violation of the act has no assurance that he will not be sued for an equivalent amount plus attorney's fees under the provisions of section 16(b) of the act." *Id.* To address this concern, Section 216(c) was enacted to "assure employers who pay back wages in full under the supervision of the Wage and Hour Division that they need not worry about the possibility of suits for liquidated damages and attorney's fees." *Id.*

Only a few cases have addressed whether cashing a check that represents the amount of back wages due as determined by the Department of Labor, is an "agreement" under Section 216(c). In *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 305-06 (7th Cir. 1986), the court found that cashing a check alone does not constitute an "agreement" under Section 216(c). In reaching this conclusion, the court noted that the Department of Labor distinguishes among settlements. "When it thinks it has achieved 'enough' for the employees--something close to full payment of the wages and overtime due--it sends them agreements explicitly

6

1  releasing the right to sue, and it requests them to sign these
2  forms if they wish to take the money. When the Department thinks
3  it has fallen far short, it does not solicit these signatures.
4  The Department's decision is the kind of supervision that § 16(c)
5  contemplates." *Id.* at 306. In *Walton*, the Department of Labor
6  did not send out release forms and in fact informed several
7  plaintiffs that cashing the checks would not extinguish their
8  claims. *Id.* The fact that the Department of Labor did not
9  request a release from the plaintiffs led the court to conclude
10 that "cashing of the checks . . . did not release [plaintiffs']
11 full claims against United." *Id.* at 307.
12      Three cases, with facts almost identical to those here,
13 distinguished *Walton*. *Mion v. Aftermarket Tool & Equip. Group*,
14 990 F.Supp. 535, 539-541 (W.D. Mich. 1997); *Heavenridge v. Ace-
15 Tex Corp.*, 1993 WL 603201 (E.D. Mich. 1993) (unpublished);
16 *Bullington v. Fayette County Sch. Dist.*, 540 S.E.2d 664, 667
17 (Ga. Ct. App. 2000). In these cases, the plaintiffs were sent a
18 settlement check along with a Department of Labor form that
19 stated: "Your acceptance of back wages due under the Fair Labor
20 Standards Act means that you have given up any right you may have
21 to bring suit. . . ." *Heavenridge*, 1993 WL 603201, *3; *see also*
22 *Mion*, 990 F.Supp. at 536 (stating WH-58 form was sent with
23 check); *Bullington*, 540 S.E.2d at 666, 667 (stating that Form WH-
24 58 containing warning that accepting check extinguished right to
25 sue was sent with check). This sentence is also in the form sent
26 to plaintiffs in this case. Doc. 23, Ex. D; Doc. 25, Ex. F. Doc.
27 27, Ex. M. *Mion*, *Heavenridge*, and *Bullington* found that cashing
28 a check that was enclosed with a release approved by the

7

Department of Labor which informed plaintiffs that acceptance of back wages, i.e., the enclosed check, prevented them from suing, was a sufficient agreement under Section 216(c) even if the plaintiff had not signed the release form. *Mion*, 990 F.Supp. at 539-41; *Heavenridge*, 1993 WL 603201 at *2-3; *Bullington*, 540 S.E.2d at 667.

Plaintiffs Gohn and Martin admit cashing the checks Crimson sent them along with a WH-58 form. The WH-58 forms state that acceptance of the back wages "means that you have given up any right you may have to bring suit for such back wages." Doc. 15, Ex. A at 50:9-51:18; Ex. B at 47:18-48:17; Doc. 25, Ex. F; Doc. 23, Ex. D. Both Gohn and Martin admit they read the release prior to cashing their checks although neither signed the release form. *Id.* They should have known that by cashing the checks they were giving up their right to sue.[2] Allowing them, to bring suit under the FLSA despite this knowledge would defeat the purpose of Section 216(c) to assure employers that if they voluntarily pay back wages they will be immune from suit. By cashing the checks Crimson sent to them, plaintiffs Gohn and Martin, agreed to the settlement and are barred under Section 216(c) from bringing suit. Defendant's motion is GRANTED as to plaintiffs Gohn and Martin.

---

[2] Plaintiff Gohn testified at his deposition that although he had read the statement that accepting back wages would bar him from bringing suit, he thought that he had to sign the release in order to agree. Doc. 15, Ex. A at 51:13-18. Plaintiff Martin stated in his deposition that he did not believe he was waiving his right to sue when he cashed the check. Doc. 15, Ex. B at 48:18-49:1.

Plaintiff Gaither did not cash his check and did not sign the release, in fact, he contends that his wife called Crimson and the Department of Labor investigator to discuss the amount of the check because Mr. and Mrs. Gaither thought the amount was incorrect. Doc. 15, Ex. C at 65:21-66:3; Doc. 28. Shortly thereafter Mr. Gaither filed suit. He kept the check because he was advised to do so by his attorney in anticipation of suit. Doc. 28. He did not "accept" the back wages as a matter of law by not returning the check. The fact that he retained the check is not sufficient to show that there was an "agreement" under Section 216(c). Defendant's summary judgment motion is DENIED as to plaintiff Gaither.

B. ESTOPPEL

Defendant argues that plaintiffs Gohn and Martin are estopped under California contract law from asserting their FLSA claims because they cashed their checks and plaintiff Gaither is estopped because he retained his check without cashing it.

The defendant's estoppel argument is merely a reiteration of its waiver argument already discussed. When Congress enacted the FLSA its purpose was to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739 (1981). In so doing, Congress recognized that there was unequal bargaining power between such employees and their employers. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the

9

population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency." *Id.* In order to effectuate this policy, the rights granted under the FLSA are essentially nonwaivable. *Barrentine*, 450 U.S. at 740; *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 115 (1946); *Brooklyn Sav. Bank*, 324 U.S. at 707.

There are only two ways that plaintiffs may waive their rights under the FLSA: 1) pursuant to Section 216(c) when the Department of Labor supervises payment; and 2) when a suit is brought against the employer pursuant to Section 216(b) and a district court enters a stipulated judgment after reviewing the settlement for fairness. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). Allowing state contract law to provide another means of waiver would disrupt Congress' intent. "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine*, 450 U.S. at 740. Defendant's summary judgment motion as to estoppel is DENIED.

C. STATUTE OF LIMITATIONS

Defendant argues that its conduct was not willful and therefore the statute of limitations on plaintiffs' FLSA claims is two years. It is moving for partial summary judgment on the claims for overtime that accrued outside of the two-year period preceding filing of this lawsuit.

The statute of limitations for FLSA actions is two years unless the violation is "willful," then it is three years. 29

U.S.C. § 255(a). By including "willful" Congress intended to draw "a significant distinction between ordinary violations and willful violations." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988). Ordinarily the two-year statute of limitations applies. *Id.* at 135. A violation is willful if the employer "knew or showed reckless disregard" that it was violating the FLSA. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128 (1985); *McLaughlin*, 486 U.S. at 133; *see also Service Employees Int'l Union, Local 102 v. County of San Diego*, 60 F.3d 1346, 1355-56 (9th Cir. 1994) (applying the knowing or reckless standard). To be willful the conduct must be more than negligent. *McLaughlin,* 486 U.S. at 133.

In expositing the standard for willfulness, *McLaughlin* rejected two other proposed standards. *Id.* at 130-135. The first, the discredited *Jiffy June* standard, was articulated as: "[A]n action is willful when there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture? . . . An employer acts willfully and subjects himself to the three year liability if he knows, or has reason to know, that his conduct is *governed* by the FLSA." *Id.* at 130 (quoting *Donovan v. Richland Shoe Co.*, 623 F.Supp. 667, 670-71 (E.D. Pa. 1985) (emphasis in original) (internal quotes omitted). The Supreme Court rejected this standard noting that it would "obliterate" the distinction between willful and nonwillful violations. *Id.* at 132-33. "'[I]t would be virtually impossible for an employer to show that he was unaware of the Act and its

11

potential applicability.'  Under the *Jiffy June* standard, the normal 2-year statute of limitations would seem to apply only to ignorant employers, surely not a state of affairs intended by Congress." *Id.* at 133 (quoting *Trans World Airlines*, 469 U.S. at 128).

The second standard rejected by the Court would have found a willful violation if, "the employer, recognizing it might be covered by the FLSA, acted without a reasonable basis for believing that it was complying with the statute." *Id.* at 134. The court rejected this standard because it would "permit a finding of willfulness to be based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." *Id.* at 135.  In rejecting both of the proposed tests, the Court held that "[i]f an employer acts unreasonably, but not recklessly, in determining its legal obligation, then, . . . its action . . . should not be [considered willful] under . . . the standard we approve today."  The standard adopted is: "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 132.

Peggie Giesbrect, Crimson's Human Resources Administrator, declares that plaintiffs were not paid overtime because she erroneously believed that the company's on-site drilling employees were not required to be paid overtime under the FLSA. She assumed that the FLSA did not cover these employees because, in general, California law is more expansive than federal law and on-site drilling employees were exempt under California law until

the year 2000. When California law changed to include on-site drilling employees, Crimson promptly took action to pay overtime. Once the Department of Labor determined that Crimson owed back overtime wages it immediately attempted to pay them. Crimson had not received any claim for unpaid overtime under the FLSA prior to notifying its employees of the change in California law.

This evidence shows that Crimson was at least negligent in its ignorance of the law, it lacked "knowledge." Plaintiffs cite no cases that hold failure to investigate federal law to determine if the employer was subject to the FLSA rises to the level of reckless disregard. No other evidence has been submitted that Crimson had knowledge or notice of the overtime requirement from any other source from which it can be inferred. Plaintiffs rely on Ms. Giesbrect's ignorance of federal employment law. The only evidence presented on the issue of willfulness was that Crimson knew the FLSA existed, but failed to investigate whether or not it applied. This is negligence. Plaintiffs have not offered evidence that a pattern of complaints was made to defendant or that any reasonably available industry information or complaints were ignored. *Troutt v. Stavola Bros., Inc.*, 905 F.Supp. 295, 302 (M.D.N.C. 1995). This amounts to a failure of proof of willfulness. Defendant's summary adjudication motion on the issue of willfulness is GRANTED. The two-year statute of limitations applies.

D.  LIQUIDATED DAMAGES

Defendant argues that it has shown that it acted in good faith and therefore plaintiffs, as a matter of law, are not

entitled to liquidated damages. Section 216(b) provides that: "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). A plaintiff's right to liquidated damages under Section 216(b) is modified by 29 U.S.C. § 260 which states:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

Under Section 260, the employer has the burden of showing that it acted both reasonably and in good faith. *Block v. City of Los Angeles*, 253 F.3d 410, 420 (9th Cir. 2001). If it fails to meet this burden, liquidated damages are mandatory. *Local 246 Utility Workers Union of Am. v. Southern California Edison Co.*, 83 F.3d 292, 297 (9th Cir. 1996). "Double damages are the norm, single damages are the exception." *Id.* (quoting *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)).

To establish good faith an employer must show that it had "an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Id.* at 298 (quoting *E.E.O.C. v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985)). To show that it acted reasonably, an employer must show that "it had reasonable grounds for believing that its conduct complied with the Act." *Id.* (quoting *Marshall v. Brunner*, 668

F.2d 748, 753 (3d Cir. 1982)).  The fact that the parties to a case have acquiesced to a particular pattern of conduct, does not establish the requirements of Section 260.  *Id.*  Employers cannot establish reasonableness by a showing of ignorance alone.  *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999).  "Apathetic ignorance is never the basis of a reasonable belief."  *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979).  Good faith requires some duty to investigate potential liability under the FLSA.  *Horan v. King County*, 740 F.Supp. 1471, 1481 (W.D. Wash. 1990).  A defendant bears the "plain and substantial burden of proving that its actions were objectively reasonable and prompted solely by good faith."  *Burgess v. Catawba County*, 805 F.Supp. 341, 350 (W.D.N.C. 1992) (internal citations omitted).

Even if defendant could establish that it acted in subjective good faith, it has failed to show that it acted reasonably.  The excuse it offers for failing to pay overtime is that it did not know that the on-site oil drilling employees were covered by the FLSA because its human resources administrator assumed, without checking, that they were not based on her understanding of California labor law.  Ignorance of the law, by itself, does not establish good faith.  Defendant's motion for partial summary judgment is DENIED as to the liquidated damages; disputed issues of material fact remain as to why defendant did not inform itself as of applicable FLSA law and whether such claimed ignorance was reasonable and in good faith.

## IV. CONCLUSION

Defendant's summary judgment motion is GRANTED as it relates to plaintiffs Gohn's and Martin's waiver under Section 216(c) and is DENIED as to plaintiff Gaither's waiver under Section 216(c).

Defendant's summary judgment motion is DENIED as to equitable estoppel.

Defendant's summary judgment motion is GRANTED as to the claims for overtime that occurred more than two years before this lawsuit was filed.

Defendant's summary judgment motion is DENIED as to Gaither's liquidated damages claim.

SO ORDERED.

DATED: 3-21-02

_____
Oliver W. Wanger
UNITED STATES DISTRICT JUDGE

United States District Court
for the
Eastern District of California
March 22, 2002

* * CERTIFICATE OF SERVICE * *

1:01-cv-05008

Gaither

v.

Crimson Resource

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on March 22, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

    Oren O'Neill                                  OWW        LJO
    1908 Brundage Ln
    Bakersfield, CA  93304

    Jason H Borchers
    Littler Mendelson
    A Professional Corporation
    5200 North Palm Avenue
    Suite 302
    Fresno, CA  93704-2225

                                                Jack L. Wagner, Clerk

                                     BY: _____
                                               Deputy Clerk